**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

**DAMIAN K. MAYES,**

    **Petitioner,**

    v.

**STATE OF KANSAS,**

    **Respondent.**

Case No. 14-CV-3175-JAR

## MEMORANDUM AND ORDER

This matter is before the Court on Petitioner Damian Mayes's Motion under 28 U.S.C. § 2254 to Vacate, Set Aside or Correct Sentence by a Person in State Custody (Doc. 1). In his motion, Petitioner, who is proceeding *pro se*, seeks relief on the grounds that the district court erred in allowing a police detective to vouch for the complaining witness's credibility, an erroneous jury instruction caused a misstatement of the State's burden of proof, the district court abused its discretion during consideration of a dispositional departure, there was prosecutorial misconduct, and there was a failure to impeach the State's witnesses. The Government has responded (Doc. 10). The motion is fully briefed, and the Court is prepared to rule. After a careful review of the record and the arguments presented, the Court denies Petitioner's motion without need for a further evidentiary hearing.

**I.**     **Legal Standard**

The Court reviews petitioner's challenges to state court proceedings pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA").[1] The AEDPA requires that federal

---

[1] *Lockett v. Trammel*, 711 F.3d 1218, 1230 (10th Cir. 2013).

courts give "significant deference to state court decisions" adjudicated on the merits.[2] Under 28 U.S.C. § 2254(d), a federal court may not grant habeas relief on any claim adjudicated in state court, unless the petitioner establishes the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[3]

A state court's decision is "contrary to" an established federal law if the state court reaches a different result than the Supreme Court has "done on a set of materially indistinguishable facts" or "if the state court applies a rule different from the governing law" set forth in Supreme Court cases.[4] A decision is an "unreasonable application" of clearly established federal law if a "state court correctly identifies the governing legal principle from [the Supreme Court's] decisions but unreasonably applies it to the facts of [a petitioner's] case."[5] Additionally, "an unreasonable application may occur if [a] state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply."[6] Courts employ an objective standard in determining what is unreasonable.[7]

A federal court must presume the state court's factual findings, including credibility findings, are correct in the absence of clear and convincing evidence to the contrary.[8] The law "stops just 'short of imposing a complete bar on federal court relitigation of claims already

---

[2] *See id.*

[3] *Williams v. Trammel*, 782 F.3d 1184, 1191 (10th Cir. 2015) (quoting 28 U.S.C. § 2254(d)(1)-(2)).

[4] *Bell v. Cone*, 535 U.S. 685, 694 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 405 (2000)).

[5] *Id.* (citing *Williams*, 529 U.S. at 407–08).

[6] *House v. Hatch*, 527 F.3d 1010, 1018 (10th Cir. 2008).

[7] *Bell*, 535 U.S. at 694 (2002) (citing *Williams*, 529 U.S. at 409–10).

[8] 28 U.S.C. § 2254(e)(1).

rejected in state proceedings.'"[9]  Courts may not issue a writ of habeas corpus if "'fairminded jurists could disagree' on the correctness of the state court's decision."[10]  Even when a petitioner has a strong case for relief, this "does not mean that the state court's contrary conclusion was unreasonable."[11]

Because Mayes proceeds *pro se*, the Court must construe his pleadings liberally and apply a less stringent standard than what is applicable to attorneys.[12]  However, the Court may not provide additional factual allegations "to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."[13]  The Court need only accept as true plaintiff's "well-pleaded factual contentions, not his conclusory allegations."[14]

## II.     Factual Background

Absent clear and convincing evidence to the contrary, a federal habeas court must presume that the state courts' factual findings are correct.[15]  The facts underlying Petitioner's conviction of aggravated indecent liberties with a child and aggravated criminal sodomy, as determined by the Kansas State Court of Appeals on Petitioner's direct appeal, are as follows.[16]

On November 29, 2008, Officer James Pfannenstiel responded to a 911 call in Newton, Kansas.  At the house, Officer Pfannenstiel spoke to F.W.L., Sr., who reported that when he arrived home before he made the 911 call, he observed Petitioner performing oral sex on a

---

[9]*Frost v. Pryor*, 749 F.3d 1212, 1223 (10th Cir. 2014) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)).

[10]*Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

[11]*Id.* at 102.

[12]*Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005); *Whitney v. New Mexico*, 113 F.3d 1170, 1173 (10th Cir. 1997).

[13]*Whitney*, 113 F.3d at 1773.

[14]*E.g., Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[15] 28 U.S.C. § 2254(e)(1); *Saiz v. Ortiz*, 392 F.3d 1166, 1175 (10th Cir. 2004).

[16] *State v. Mayes*, No. 107,409, 2013 WL 1688927, at *1–2 (Kan. Ct. App. Apr. 12, 2013).

person he initially though was his fiancée's son.  When F.W.L., Sr. went inside, he determined Petitioner was instead performing oral sex on his eleven-year-old son, F.W.L., Jr.  When police arrived at the scene, Petitioner was no longer present.

Officer Pfannenstiel spoke with F.W.L., Jr., and asked "if [Petitoner] had touched him somewhere on his body where it's not okay to touch."  In response, F.W.L., Jr. stated Petitioner touched him on his privates.  Officer Pfannenstiel then asked F.W.L., Jr., "[i]f [Petitioner] had touched his mouth to his privates."  F.W.L., Jr. responded by shaking his head affirmatively, and Officer Pfannenstiel stopped questioning him.

On December 3, 2008, Officer Brad Celestin conducted a Finding Words forensic interview with F.W.L., Jr.  During the interview, F.W.L., Jr. stated that while he was playing video games, Petitioner kept putting his hand on F.W.L., Jr.'s penis.  In addition, F.W.L., Jr. stated Petitioner also put F.W.L, Jr.'s penis in his mouth.

Detective Craig Douglass interviewed Petitioner at the Newton Police Station regarding the alleged incident.  Detective Douglass learned that Petitioner, a 33-year-old elementary school paraprofessional, had known F.W.L., Sr.'s fiancée, S.B., for around seven years.  Petitioner said he went to the house that night to babysit F.W.L., Jr. and S.B.'s two sons and that he spent most of the night in the bedroom shared by F.W.L., Jr. and one of S.B.'s sons.

Petitioner indicated he was with the boys on the bedroom floor, watching movies and playing video games.  Petitioner told Detective Douglass that at one point, F.W.L., Jr. was "lying down on the floor all sprawled out" in just a pair of shorts "in somewhat of a suggestive position," so he covered F.W.L., Jr. with a comforter.  Petitioner started to say something about either F.W.L., Jr. lying on top of him or him lying on top of F.W.L., Jr., but corrected himself to say he was lying beside F.W.L., Jr.

4

When Detective Douglas s asked whether there was any touching or physical contact between Petitioner and the boys that night, he said that while wrestling with the boys, S.B.'s son kept trying to grope his crotch.  According to Petitioner, the boys suggested they wrestle naked because it was hot in the house, but he did not allow them to do so.  Petitioner also stated that at one point, F.W.L., Jr. said, "[i]f you touch it, it gets hard."  When Detective Douglass asked if there could have been any accidental contact with the boys that F.W.L., Jr. could have perceived as inappropriate, Petitioner indicated there was none that he could recall.

Petitioner told Detective Douglass that S.B. came home around 2 or 2:30 a.m.  After telling him to turn off the TV and to shut the door when he left, S.B. went upstairs.  Around 3 or 3:30 a.m., F.W.L., Sr. came home, and Petitioner heard banging on the bedroom door and a male voice yell to get out.  Petitioner assumed it was F.W.L., Sr. but he only saw S.B.'s other son in the living room when he left the house.

On June 30, 2009, the State filed a criminal complaint against Petitioner charging him with one count each of aggravated indecent liberties with a child and aggravated criminal sodomy.  The district court held a three-day jury trial, commencing on November 17, 2010.  At trial, Officer Pfannenstiel, Officer Celestin, and Detective Douglass testified on the State's behalf.  F.W.L., Jr. and F.W.L., Sr. testified regarding the events on November 29, 2008.

Further, the defense showed the jury a video recording of Officer Celestin's Finding Words interview with F.W.L., Jr.  During the State's redirect examination of Officer Celestin, the prosecutor asked him how many forensic interviews he had conducted since receiving Finding Words training.  Officer Celestin answered that he had done somewhere around 80 to 100 such interviews with minors.  The following exchange then occurred:

> Q. [Prosecutor]: Have you had circumstances where you have interviewed children where it would appear, based upon your training and experience, that maybe the child had been coached?
> A. [Officer Celestin]: Yes, sir.
> Q. Did you get any kind of impression like that when you were conducting the interview?
> [Defense counsel]: Object as his opinion.
> [The Court]: I'm sorry?
> [Defense counsel]: I object to his opinion about whether this child had been coached or not.
> [The Court]: No, I'm not going to permit it—inquiries whether you've [sic] been coached or not. I'm going to permit an opinion as to whether—why it was perhaps consistent, but overrule the objection—well, granted to the extent I'm not going to allow you to ask that question in that fashion.
> [Prosecutor]: Yes, I will rephrase it.
> Q. Detective Celestin, when you conducted this interview on December the 3rd of 2008, with [F.W.L, Jr.], was his description of events to you, the interview, your interaction with him, his attitude and demeanor—was that consistent with your experience before where you have seen children that have, in your opinion, been coached?
> A. No sir, it was not consistent.
> [Defense counsel]: Objection. Again, I'd ask that question be stricken. He's giving his opinion. He is certainly not an expert in this area. There's no showing that he has a degree in psychology or anything else that would make him able to testify whether or not he believes a child has been coached.
> [The Court]: Overruled. He was testifying as to his experience. You can have recross on that point. Continue.

After that, the prosecutor had no further questions, and defense counsel did not bring the issue up again on recross-examination.

For its case, the defense called Petitioner's wife to testify regarding the telephone calls between her, S.B., and Petitioner. She also testified about cell phone calls she received from Petitioner on the night of the alleged incident.

After weighing the evidence presented by the parties, the jury found Petitioner guilty on both charges. Following the trial, Petitioner filed a motion for a new trial, a motion for judgment of acquittal, and a motion for durational departure. At a March 1, 2011 hearing, the district court denied Mayes's motion for a new trial and motion for judgment of acquittal. The district court

granted Mayes's motion for a downward durational departure, but denied his request for a downward dispositional departure. Mayes was thus sentenced to a term of 214 months imprisonment.

Petitioner appealed, alleging (1) the district court erred in allowing testimony of Officer Celestin allegedly vouching for the minor victim's credibility, (2) the district court violated his Fifth and Sixth Amendment rights with its jury instruction regarding reasonable doubt, (3) the district court abused its discretion when denying Petitioner's motion for a dispositional departure, and (4) there was prosecutorial misconduct during the closing arguments. The Kansas Court of Appeals affirmed Petitioner's convictions on April 12, 2013.[17]

Petitioner sought review of the Kansas Court of Appeals' decision in the Kansas Supreme Court. His petition for review alleged only three issues: (1) error in allowing the testimony of Officer Celestin regarding the complaining witness's credibility, (2) violation of the Fifth and Sixth Amendment based on the jury instructions, and (3) abuse of discretion relating to the dispositional departure. Petitioner did not raise the issue of prosecutorial misconduct. The Kansas Supreme Court denied review on August 29, 2013.

Petitioner filed his federal habeas petition in this Court on September 10, 2014.[18] He asserts five grounds for relief. First, Petitioner argues that the district court erred in allowing Officer Celestin to vouch for the complaining witness's credibility. Second, Petitioner contends the district court violated his Fifth and Sixth Amendment rights because the jury instructions required a verdict of guilty upon proof of "any" element of the charged offense, rather than "each" element. Third, Petitioner claims the district court abused its discretion by allegedly considering evidence of homosexuality in regards to a motion for dispositional departure.

---

[17] *Id.*

[18] Doc. 1.

Fourth, Petitioner alleges prosecutorial misconduct during closing arguments. Fifth, Petitioner argues there should have been impeachment of the State's witnesses. The State has responded that the allegations of prosecutorial misconduct and impeachment of the State's witnesses are procedurally defaulted. It argues that the other claims are not unreasonable or contrary to federal law in light of the evidence presented.

### III.     Discussion

### A.     Procedurally Defaulted Claims

A federal court may not grant a writ of habeas corpus unless, pursuant to 28 U.S.C. § 2254(b)(1), the petitioner has exhausted the available state court remedies.[19] Under the exhaustion doctrine, "[a petitioner] must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."[20] Therefore, "any claims not included in a petition for discretionary review are unexhausted."[21] Ordinarily, when a petitioner does not bring claims to the state's highest court, a claim is unexhausted.[22] However, if a petitioner's claims are barred under state law and it is too late to pursue relief in state court, a claim will be deemed exhausted because there are no state remedies available to the petitioner.[23]

Even when the claim is considered exhausted because it is too late to pursue relief in state court, it may be subject to dismissal under the doctrine of procedural default.[24] For the court to review a claim that has been procedurally defaulted, the petitioner must: (1) show cause for

---

[19] *Frost v. Pryor*, 749 F.3d 1212, 1231 (10th Cir. 2014).

[20] *Id.*

[21] *Id.*

[22] *Coleman v. Thompson*, 501 U.S. 722, 732 (1991).

[23] *Verlarde v. Archuleta*, 740 F. App'x 740, 744 (10th Cir. 2016) (citing *Gray v. Netherland*, 518 U.S. 152, 161 (1996); *Coleman*, 501 U.S. at 732)).

[24] *See Frost*, 749 F.3d at 1231 (quoting *Coleman*, 501 U.S. at 735 n.1).

8

default and actual prejudice as a result of the alleged violation of federal law, or (2) demonstrate that the failure to consider the procedurally defaulted claim will result in a fundamental miscarriage of justice because the petitioner "made a 'credible' showing of actual innocence."[25] "Cause" requires the petitioner show that some objective external factor impeded efforts to comply with state procedural rules.[26] "Prejudice" requires the petitioner to demonstrate "actual prejudice as a result of the alleged violation of federal law."[27]

Petitioner's allegations of prosecutorial misconduct and impeachment of the State's witness are both barred from review as procedurally defaulted claims. Neither claim exhausted all state court remedies. Petitioner raised his allegation of prosecutorial misconduct only to the Kansas Court of Appeals and not the Kansas Supreme Court. Petitioner did not raise his allegation of impeachment of the State's witness to either the Kansas Court of Appeals or the Kansas Supreme Court. Under K.S.A. 60-1507(f)—providing a one-year time limit for filing K.S.A. 60-1507 motions—and the Kansas Supreme Court Rule 183(c)(3)—preventing claims of trial error from being raised in K.S.A. 60-1507 motions—Petitioner can no longer raise these abandoned issues in the Kansas state courts as they are procedurally barred under state law.[28]

Moreover, Petitioner does not establish the Court should review his procedurally defaulted § 2254 claims by demonstrating cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claims results in a miscarriage of justice. No external factors such as discovery of new evidence, a change in law, or

---

[25] *Id.* (citations omitted).

[26] *Spears v. Mullin*, 343 F.3d 1215, 1255 (10th Cir. 2003) (citing *Coleman*, 501 U.S. at 750).

[27] *Fairchild v. Trammel*, 784 F.3d 702, 719 (10th Cir. 2015) (quoting *Coleman*, 501 U.S. at 750).

[28] K.S.A. 60-1507(f) states that a person in custody must seek review within one year of (1) the final order of the last appellate court to exercise jurisdiction on direct appeal or the termination of appellate jurisdiction; or (2) the denial of a petition for writ of certiorari to the United States supreme court or issuance of a final order. The Kansas Supreme Court denied review on August 29, 2013. Thus, the possibility for review in state court became procedurally barred on August 29, 2014.

interference by state officials that prevented Petitioner from complying with the state procedural rules exist in this case.[29] Because Petitioner does not argue or demonstrate cause for his procedural default, the Court need not reach the question of actual prejudice.[30] Therefore, Petitioner fails to meet the first exception to overcome the procedural default of his claims.

Similarly, Petitioner does not demonstrate that denial of review of these § 2254 claims will result in a fundamental miscarriage of justice. Under the fundamental miscarriage of justice exception, to excuse a procedural default, the petitioner must supplement her constitutional claim with a colorable showing of actual innocence.[31] To establish actual innocence, Petitioner must demonstrate that "'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted h[er].'"[32] Furthermore, "actual innocence means factual innocence not mere legal insufficiency."[33] A consideration of the evidence in this case does not demonstrate a colorable showing of Petitioner's actual innocence, nor does Petitioner allege a fundamental miscarriage of justice arising from these claims.

Therefore, as Petitioner does not demonstrate either a cause for the defaulted claims and actual prejudice, or actual innocence under the fundamental miscarriage of justice exception, this Court finds his § 2254 claims of prosecutorial misconduct and impeachment of the State's witness are procedurally barred, and not subject to review by this Court.

---

[29] *McCleskey v. Zant*, 499 U.S. 467, 493–94 (1991); *Murray v. Carrier*, 477 U.S. 478, 488 (1986) (citations omitted).

[30] *See Coleman*, 501 U.S. at 750.

[31] *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986).

[32] *Bousley v. United States*, 523 U.S. 614, 623 (1998) (quoting *Schlup v. Delo*, 513 U.S. 298, 327–28 (1995)).

[33] *Id.*

**B.     Preserved Claims**

Petitioner's remaining arguments under § 2254 consist of erroneously admitted testimony from Officer Celestin, a misstatement of the reasonable doubt jury instructions, and an abuse of discretion in denying a dispositional departure. Each of these claims lacks merit, as discussed in turn.

**1.     Officer Celestin's Testimony**

Petitioner argues that the district court erred in allowing Officer Celestin to testify F.W.L., Jr. was not behaving in a manner consistent with a child who had been coached during his interview. To the extent this claim relies on state-law principles, it is not cognizable on federal habeas review.[34] Because Petitioner is *pro se*, in abundance of caution, the Court liberally construes this claim as a claim of violation of due process under the Fourteenth Amendment of the United States Constitution.[35] However, even construed as claiming a violation of the Fourteenth Amendment, the Court rejects Petitioner's claims arising from alleged errors in the district court's admission of Officer Celestin's testimony regarding F.W.L., Jr.'s credibility.

To find a violation of due process based on state evidentiary rulings, the court must find the rulings were so grossly prejudicial[36] that it "rendered the trial so fundamentally unfair that a

---

[34] *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) (stating "it is not the province of a federal habeas corpus court to reexamine state-court determinations of state-law questions").

[35] It is unclear from the appellate records whether Petitioner's objection to allowing Officer Celestin to testify as to the witness's credibility was considered as a violation of state law or federal law. The Court did not find in the record any indication that this was asserted as a violation of the Fourteenth Amendment. The Court believes because this was not asserted in violation of federal law in the state appellate proceedings on direct review, it is a procedurally defaulted claim. *See Moss v. McKune*, 258 F. Supp. 2d 1168, 1174 (D. Kan. 2003) (concluding where Petitioner contended in state appellate proceedings that error was committed under state law and Petitioner raised in habeas proceedings that error was committed under federal law, he procedurally defaulted his federal claim for purpose of habeas relief). However, because it is unclear whether this claim was raised under federal law, namely the Fourteenth Amendment, in the state court proceedings, the Court proceeds to the merits.

[36] *Harris v. Poppel*, 411 F.3d 1189, 1198 (10th Cir. 2005) (quoting *Bullock v. Carver*, 297 F.3d 1036, 1055 (10th Cir. 2002)).

denial of constitutional rights results."³⁷ The Court must examine the entire proceedings, including the strength of the evidence against Petitioner and instructions to the jury, to determine whether state evidentiary rulings resulted in fundamental unfairness.³⁸

Here, this Court finds that in light of all the evidence, allowing Officer Celestin's testimony did not render the trial fundamentally unfair because due to other evidence and witnesses, Officer Celestin's testimony did not drive jury's verdict. The jury had an opportunity to listen to F.W.L., Jr.'s testimony and view the Finding Words interview at trial.³⁹ Additionally, the jury heard testimony from F.W.L., Sr. regarding his observation of the victim and Petitioner on November 29, 2008.⁴⁰ This evidence provided the jury with a basis to determine whether, in light of all the testimony, F.W.L., Jr. offered credible testimony and to determine Petitioner's guilt. Therefore, as the compilation of evidence suggests, the jury could have reached the same verdict without Officer Celestin's testimony. Thus, this Court rejects Petitioner's claim of an alleged evidentiary error violating his due process rights.

## 2.  Reasonable Doubt Instruction

Petitioner alleges the district court violated his Fifth and Sixth Amendment rights when it allowed a verdict of guilty upon proof of *any* element of the charged offense, rather than *each* element of the charged offense. The Court rejects this argument.

Under federal law, the government must prove beyond a reasonable doubt every element of a charged offense.⁴¹ As long as the trial court instructs the jury on the requirement that the

---

³⁷ *Harris*, 411 F.3d at 1197 (quoting *Duckett v. Mullin*, 306 F.3d 982, 999 (10th Cir. 2002)).

³⁸ *See id.* at 1198 (citations omitted).

³⁹ *See* Transcript of Record (Vol. 1) at 160–61, *State v. Mayes*, No. 107,409, 2013 WL 1688927, at *1–2 (Kan. Ct. App. Apr. 12, 2013) .

⁴⁰ *See id.* at 74–119.

⁴¹ *United States v. Clifton*, 406 F.3d 1173, 1177 (10th Cir. 2005) (citing *Victor v. Nebraska*, 511 U.S. 1, 5 (1994)).

State prove defendant's guilt beyond a reasonable doubt, the Constitution does not "require that any particular form of words be used in advising the jury of the government's burden of proof."[42] To determine whether a mischaracterization of the burden occurred, the question is whether there is a reasonable likelihood that the jury understood the instructions to allow a conviction based on something less than proof beyond a reasonable doubt as to every element of a charged offense.[43]

Petitioner fails to establish the existence of a likelihood that the jury misunderstood the jury instructions and convicted him based on insufficient proof. At trial, the pertinent jury instruction stated:

> The test you must use in determining whether the defendant is guilty or not guilty is this: If you have a reasonable doubt as to the truth of *any* of the claims required to be proved by the State, you must find the defendant not guilty. If you have no reasonable doubt as to the truth of *any* of the claims required to be proved by the State, you should find the defendant guilty.[44]

Petitioner bases his argument of a misstatement of the reasonable doubt instruction on the Pattern Instruction Kansas ("PIK") Committee abandoning the use of the phrase "*any*" of the claims required to be proved in jury instructions, and replacing it with "*each*" of the claims required to be proved, and the use of *any* not being found in other state's pattern instructions.[45] Although the Kansas Supreme Court found in *Miller v. State* that transposing *any* and *each* would misstate the State's reasonable doubt burden, the same is not true for the reasonable doubt instruction at issue here.[46]

---

[42] *Id.* (quoting *Victor*, 511 U.S. at 5).

[43] *Victor*, 511 U.S. at 6 (citations omitted).

[44] *See* Transcript of Record (Vol. 2) at 54, *Mayes*, 2013 WL 1688927, at *6.

[45] *See id.* (emphasis added).

[46] *Miller v. State*, 318 P.3d 155, 159 (Kan. 2014) (holding that use of the word "each" was substituted for "any" in the standard instruction, which was "plainly wrong" because it effectively told the jury it could acquit only if reasonable doubt existed as to all elements).

The use of *any* instead of *each* does not result in a misstatement of the State's beyond a reasonable doubt burden of proof. The Kansas Supreme Court has found that the older version of PIK 52.02, which contains the language used to instruct the jury in this case, is an appropriate statement on reasonable doubt.[47] Though the use of the new PIK 3d. 52.02 offers clarification of the reasonable doubt instruction, the older version of the instruction is legally appropriate.[48] Furthermore, the jury instruction in its entirety places the appropriate burden of proof on the State, allowing a reasonable jury to understand and apply the correct instructions. Thus, as there was no erroneous application of clearly established federal law, and the use of the jury instruction was not unreasonable, this Court rejects Petitioner's argument that the jury instructions misstated the State's beyond a reasonable doubt burden of proof. Therefore, this Court denies Petitioner's claims of violations if his Fifth and Sixth Amendment rights.

**3.      Dispositional Departure**

Petitioner alleges that the district court abused its discretion during its consideration of a dispositional departure by considering evidence concerning Petitioner's orientation and sexual desire. To the extent this claim relies on state-law principles, it is not cognizable on federal habeas review.[49] Even if the claim were founded on a violation of federal law or Petitioner's Constitutional rights,[50] however, the claim lacks evidentiary basis.[51] Therefore, the Court rejects this argument.

---

[47] *State v. Herbel*, 299 P.3d 292, 307 (Kan. 2013) (citation omitted); *see also State v. Beck*, 88 P.3d 1233, 1235–36 (Kan. 2004) (finding the use of the word *any* in both places neither creates ambiguity nor allows a jury to convict a defendant when only one element of the crime is proven, particularly where an instruction defining the crime charged provides that each of the elements had to be proven beyond a reasonable doubt).

[48] *Herbel*, 299 P.3d at 307.

[49] *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) (stating "it is not the province of a federal habeas corpus court to reexamine state-court determinations of state-law questions").

[50] Plaintiff does not articulate a theory for which the failure to receive a dispositional departure is in violation of federal law. The Court doubts that there would be federal grounds for such a claim. *Pearl v. McKune*, 861 F. Supp. 1024 (D. Kan. 1994) ("So long as the type of punishment is not based upon any proscribed federal

During trial, the State presented testimony of a witness who testified that Petitioner told him a busboy—appearing to be between the ages of fourteen and sixteen— "was kind of cute," that Petitioner said "[sixteen] is legal," and that "once a boy gets to [eighteen] that's getting too old . . . ."[52] Additionally, over defense counsel's objections, the district court allowed the prosecutor to ask the witness if he believed Petitioner was sexually interested in males, to which the witness responded "Yes."[53]

While the district court allowed this testimony, the court's ruling did not rely on this testimony when deciding the issue of departure. Instead, the court specifically stated:

> My concern is . . . regardless of the kinds of discussions that occurred, what happened here was such a rip in the fabric of society that the Court is compelled to respond to it in a very, I think, forceful kind of way. . . . so much damage has been done to the victim and to the family and the friends . . . .[54]

Therefore, a review of the district court's decision regarding the downward dispositional departure does not suggest the court based its decision on Petitioner's alleged sexual attraction to males. Instead, the district court considered the severity of the crime and the impact it had on the victim when denying a dispositional departure.

The lack of evidence to support a claim that the court improperly considered Petitioner's homosexuality when denying his probation request deprives the claim of evidence that would

---

grounds such as being cruel and unusual, racially or ethnically motivated, or enhanced by indigency, the penalties for violations of state statutes are matters of state concern."). However, because Petitioner proceeds *pro se* and the Court must liberally construe this matter, this Court proceeds assuming that a cognizable federal claim exists.

[51] As with Petitioner's claim that Officer Celestin's testimony was admitted in error, it is unclear whether the dispositional departure claim was considered in violation of state or federal law during the state appellate proceedings. The Court believes that Petitioner and the state court appeals rested on state law grounds, so the federal claims are procedurally defaulted. *See Moss*, 258 F. Supp. 2d at 1174. However, in an abundance of caution, the Court considers the dispositional departure claim made in violation of federal law and the appellate findings rested on federal law.

[52] *State v. Mayes*, No. 107,409, 2013 WL 1688927, at *10 (Kan. Ct. App. Apr. 12, 2013).

[53] *Id.*

[54] *Id.*

allow this Court to find the district court erroneously denied a dispositional departure and in doing so violated Petitioner's Constitutional rights.  As such, this dispositional departure was not contrary to or an unreasonable application of clearly established federal law.[55]  Furthermore, it was not an unreasonable determination of facts.[56]  Thus, this Court denies Petitioner's claim for relief stemming from the district court's alleged abuse of discretion during sentencing.

### IV.     Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases requires the federal district court reviewing a habeas petition to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Under U.S.C. § 2253(c)(2), the court may issue a certificate of appealability "only if the applicant makes a substantial showing of the denial of a constitutional right."  A petitioner must demonstrate either that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong" or that issues in the petition are "adequate to deserve encouragement to proceed further."[57]  When the court rules on procedural grounds, a petitioner must demonstrate reasonable jurists could debate "whether the petition states a valid claim of the denial of a constitutional right [and] whether the district court was correct in its procedural ruling."[58]  Moreover, a movant does not need to demonstrate his appeal will succeed to be entitled to a Certificate of Appealability, but must "prove something more than the absence of frivolity or the existence of mere good faith."[59]

The Court concludes it should not issue a certificate of appealability.  Nothing suggests the Court's rulings in this case are debatable or incorrect, and no record authority suggests the

---

[55] *Williams v. Trammel*, 782 F.3d 1184, 1191 (10th Cir. 2015) (quoting 28 U.S.C. § 2254(d)(1)-(2)).

[56] *Id.*

[57] *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation omitted).

[58] *Id.* at 478.

[59] *U.S. v. Williams*, 410 Fed.Appx. 97, 99 (10th Cir. 2010) (citation omitted).

Tenth Circuit would resolve this case differently. Thus, the Court declines to issue a certificate of appealability.[60]

**IT IS THEREFORE ORDERED BY THE COURT** that Petitioner's Writ of Habeas Corpus (Doc. 1) filed pursuant to 28 U.S.C. § 2254 is **denied.**

**IT IS SO ORDERED.**

Dated: February 23, 2017

                                                S/ Julie A. Robinson
                                                JULIE A. ROBINSON
                                                UNITED STATES DISTRICT JUDGE

---

[60] In so ruling, the Court notes the petitioner may not appeal the denial of the certificate, but may seek a certificate of appealability from the Tenth Circuit. *See* Rules Governing § 2254 Cases, Rule11(a).